```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA            01 JUN -4 AM 11:25
                       JASPER DIVISION
```

MICHAEL HOLLOMAN, SR., etc.,   )
                               )
Plaintiff,                     )
                               )   CIVIL ACTION NO.
v.                             )
                               )   00-AR-1855-J
WALKER COUNTY BOARD OF         )
EDUCATION, et. al,             )
                               )
Defendants.                    )

**ENTERED JUN - 4 2001**

## MEMORANDUM OPINION

Before the court is a motion by Fawn Allred ("Allred") and George Harland ("Harland"), two of the defendants in the above-entitled cause, seeking summary judgment. Michael Holloman, Sr. ("Holloman") brings this action pursuant to 42 U.S.C. §1983 on behalf of his son, a minor, Michael Holloman, Jr. ("plaintiff"), for alleged violations of his son's First and Fourteenth Amendment rights of freedom from established religion, and free expression. Holloman also alleges that the challenged acts violate Article I, Sections 3 and 4 of the Alabama Constitution. Originally, Holloman sought to represent a class of similarly situated persons, but class action status was denied on November 21, 2000, and no appeal from that order was attempted by plaintiff. Holloman's complaint alleges: (1) that plaintiff, while a student, was forced by defendant, Walker County Board of Education, and by defendants, Allred and Harland, who were school officials, to recite the pledge of allegiance and/or to salute the flag of

the United States of America; (2) that plaintiff was subjected to punishment for refusing to comply with the compulsory pledge and salute; and (3) that plaintiff was forced by defendant Allred, his teacher, to sit in class at Parrish High School during first period for a school-sanctioned "prayer request" and a moment of silence. Harland, plaintiff's principal, is not implicated in the "prayer request" or the "moment of silence" issues.

Allred and Harland say that they possess qualified immunity for their actions. They necessarily concede *arguendo* that what plaintiff says happened did, in fact, happen. There are few, if any, disputes of material fact. At the time of the alleged deprivations of plaintiff's rights, Allred and Harland, who are only sued as individuals, say that they were exercising their legitimate discretion as employees of Walker County Board of Education and had no reason to believe that they were violating constitutional rights. For the reasons set forth in the opinion below, the court will grant defendants' motion as to the §1983 claims and will dismiss without prejudice the state law claims.

### **Qualified Immunity Defense**

Once a governmental actor interposes the defense of qualified immunity, a plaintiff, in order to overcome it, must demonstrate that the defendant's actions "violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

2

U.S. 800, 818 (1982). Under the standard enunciated in *Harlow*, "[i]f the law at that time [of the alleged deprivation of rights] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he [or she] fairly be said to 'know', that the law forbade conduct not previously identified as unlawful." *Id*.

The standard of *Harlow* has been made as expansive as possible by the Eleventh Circuit, which has made qualified immunity the norm rather than the exception. The Eleventh Circuit has, for instance, said:

> General rules, propositions, or abstractions . . . do not determine qualified immunity. Instead, the circumstances that confronted the government actor must have been "materially similar, to prior precedent to constitute clearly established law because public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases. For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.

*Wood v. City of Lakeland*, 203 F.3d 1288, 1291-92 (11th Cir. 2000) (internal citations and quotations omitted). Qualified immunity, therefore, is almost always an absolute defense for governmental actors. Only those acts that are "so obviously wrong, in light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law

3

would have done such a thing" fall outside the protections afforded by the qualified immunity doctrine.  *Lassiter v. Alabama A & M Univ.*, 28 F. 3d 1146, 1149 (11th Cir. 1994) (*en banc*).

Pursuant to Alabama Code § 16-43-5, "The State Board of Education shall afford all students attending public kindergarten, primary and secondary schools the opportunity each school day to voluntarily recite the pledge of allegiance to the United States flag."  Holloman was punished for failing and/or refusing to salute the American flag in traditional fashion while other students were saluting and reciting as the Alabama Code guaranteed them the unimpeded opportunity to do. Allred, plaintiff's teacher, testifies without contradiction that the day before the incident in question, plaintiff asked her if there was any way, other than placing his hand over the heart, to salute the flag.  Allred replied that plaintiff could salute the flag "military style".  In Allred's opinion, perhaps not shared by everybody, when reciting the pledge of allegiance, either placing the hand over the heart or executing a military salute are "appropriate forms of expression", whereas raising one's clinched fist in the air is "not allowed . . . [and is] not acceptable behavior in this country."  Allred Depo., at 74.  Allred is not alone in her belief in this regard.  But, the majority of the general public (not including the sub-class of the justices of the

4

Supreme Court) does not decide matters of constitutional interpretation.

Instead of performing either of the socially accepted ways of saluting the flag, Holloman chose to raise his clinched fist while maintaining the silence that he had the right to maintain. This appeared to Allred, and subsequently to Harland, to constitute an open act of defiance to school authority, as well as a protest against what the pledge of allegiance stands for. It was certainly designed to disrupt or to interfere with the patriotic routine in which other students were participating. Holloman's gesture reminds this court of the sprinters, Tommie Smith and John Carlos, when they raised gloved clinched fists during the playing of "The Star Spangled Banner" at the Mexico City Olympics in 1968 as a protest against whatever they were protesting against. The raised clinched fist, both then and now, is known as a signal of defiance and of hostility toward societal norms. Whether Holloman's gesture was an echo of that event in Mexico City, this court cannot know. This court need not speculate about Holloman's real intent. It could have been no more than a childish expression of resistance to authority, or it could have been a deliberate act of insubordination, or it could have been a little bit of both. This court is only concerned with whether the teacher and the principal, who legitimately perceived that what Holloman did was objectionable, were lawfully exercising their discretion as employees of Walker County Board of Education when they punished him for it.

5

Harland, who was plaintiff's principal, and who joined Allred in imposing mild discipline upon plaintiff, was not involved in the events that plaintiff claims to have constituted an unconstitutional state sponsorship of religion, namely, the actions of Allred, plaintiff's teacher, in responding to student "prayer requests" and presiding over a moment of silence at the start of the school day. Students who occasionally made a particular voluntary prayer request, such as "Let's remember Susie; she's in the hospital", were allowed orally to make their requests known to their teacher and their fellow students before the moment of silence. Allred, who admittedly sometimes "slipped up" by using the word "pray" instead of the words "moment of silence", would sometimes "slip up" doubly by indicating the end of the moment of silence by voicing the word "amen", a poor substitute, perhaps, for the words "let's get to work".

### Conclusion

The qualified immunity analysis under §1983 always begins with a finding either that the conduct complained of violated some constitutional prohibition or that it did not. If an alleged constitutionally protected right was not violated, there is no reason to address the defendant's claim of immunity. In this particular case, the court finds that the mild punishment administered to this student after he raised a clinched fist during the pledge of allegiance was not a violation of the First or Fourteenth Amendments. Therefore, everything said in this opinion in support of the individual

6

defendants' qualified immunity on the pledge issue is a redundancy. As to plaintiff's second claim, the court finds that a teacher's use in a public school classroom of the words "prayer" and "amen" in conjunction with a "moment of silence" does violate the First Amendment and the Fourth Amendment prohibitions against the establishment of religion, meaning that a discussion of Allred's qualified immunity defense is necessary.

The court finds that if, *arguendo*, what either Allred or Harland did constituted a violation of any constitutional right, they both acted within their discretion as governmental actors and are entitled to qualified immunity. The court reaches this conclusion in no small part because of the Eleventh Circuit's strict standard that must be met before a right can be deemed "clearly established". Even though the Supreme Court in *West Virginia Board of Education v. Barnette*, 319 U.S. 624, 642, 63 S. Ct. 1178, 1187, 87 L.Ed. 1628 (1943), determined that "the action of local authorities in compelling the flag salute and pledge transcends constitutional limitations", here, pre-existing law in the Eleventh Circuit and the Supreme Court fails to clearly and unequivocally establish that Allred's and Harland's actions violated federal law under the particular circumstances of this case. The court cannot know what defendants would have done if Holloman had simply refused to recite the pledge or to place his hand over his heart, things he could have done with impunity, instead of doing what he did, namely, disrupting his fellow

7

students' participation in the pledge. The difference between refusing to recite the pledge and raising a clinched fist during it is crucial in assessing defendants' reaction to Holloman's conduct. Would plaintiff argue that he had a First Amendment right to raise a hand with only the middle finger extended during the pledge? How about the Nazi salute? After all, the "Heil Hitler" salute is very "military". Freedom of expression has its limitations, especially in the context of the classroom. This court is not prepared to say that what defendants did violated any well understood constitutional norms. It did not even violate any constitutional prohibition. To hold that defendants should have realized that they were violating Holloman's freedom of expression when they held him accountable for the clinched fist would defy Eleventh Circuit precedent. There was no way that what was, in fact, reasonable could have been unconstitutional.

The most recent hard lesson about qualified immunity learned by this court, and taught by the Eleventh Circuit, is found in *Skurstenis v. Jones*, 236 F.2d 678 (11th Cir. 2000), in which the reviewing court strongly disagreed with this court's denial of qualified immunity. The Eleventh Circuit there emphasized that immunity is routinely enjoyed by public officials in cases where there was no clear binding legal precedent that unequivocally pointed to the unconstitutionality of what they were about to do *vis-a-vis* some citizen, whose federal rights were allegedly implicated.

In May of 2000, there was no precedent, binding on either

8

of these two defendants, that clearly explained to them that they could not punish a student who "acts out" during the pledge of allegiance, especially when that pledge was expressly mandated by the Alabama Legislature. If there is such a binding precedent, this court has not found it.

In May of 2000, the complained of "moment of silence" took place in Allred's classroom. The Eleventh Circuit had not at that time condemned a moment of silence. Neither had it condemned student initiated religious expression. In fact, the Eleventh Circuit had previously said in *Chandler v. James*, 180 F.3d 1254 (11th Cir. 1999):

> The suppression of student-initiated religious speech is neither necessary to, nor does it achieve, constitutional neutrality towards religion. For that reason, the Constitution does not permit its suppression.

180 F.3d at 1261.

Since this was said by the Eleventh Circuit in 1999, there have been expressions from the Supreme Court of the United States and from the Eleventh Circuit that may throw doubt on the extent to which "student-initiated religious speech" can be allowed under First Amendment constraints. For instance, in *Chandler v. Siegelman*, 230 F.3d 1313 (Cir. 2000), an opinion made necessary by *Santa Fe Independent School District v. Dyer*, ____ U.S. ____, 120 S.Ct. 2266 (2000), the Eleventh Circuit distinguishes between the **sponsorship** of student initiated prayer and the **censorship** of student prayer. Allred did not have this guidance when she either avoided censoring

9

student prayer or sponsored it by what she said and did. In view of the Eleventh Circuit jurisprudence on qualified immunity prior to Allred's acts, this court is not prepared to say that when Allred presided over the school moment of silence, its unconstitutional character had been clearly established. In fact, this court is not itself sure whether what Allred allowed or participated in, except for her use of the words "prayer" and "amen", were unconstitutional.

No jury could reasonably conclude that "every like-situated, reasonable" teacher or principal would necessarily know that punishing Holloman for his unorthodox and deliberately provocative and disruptive gesture violated federal law, or that every teacher would know that using the word "prayer" as a euphemism for "moment of silence", violated freedom of religion or freedom from religion. Therefore, to the extent that Allred and Harland may have been unconstitutional, they are entitled to qualified immunity as to all of plaintiff's §1983 claims, and their motion for summary judgment will be granted. A separate and appropriate order in conformity with the foregoing will be entered.

DONE this ____4th____ day of June, 2001.

_____
WILLIAM M. ACKER, JR.
U.S. DISTRICT COURT JUDGE